[Cite as *In re M.D.R.*, 2019-Ohio-1054.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| M.D.R. AND J.I.R., DEPENDENT | | |
| CHILDREN | : | |
| | | **CASE NOS. 2018-P-0032** |
| | : | **2018-P-0033** |
| | : | |
| | : | |

Appeals from the Portage County Court of Common Pleas, Juvenile Division, Case Nos. 2015 JCC 00919 and 2015 JCC 00920.

Judgment: Affirmed.

*Victor V. Vigluicci,* Portage County Prosecutor, and *Brandon T. Wheeler,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Shubhra N. Agarwal,* 3732 Fishcreek Road, #288, Stow, OH 44224 (For Appellant, Kaitlin Rhine).

*Aaron J. Heavner,* 228 West Main Street, P.O. Box 248, Ravenna, OH 44266 (Guardian ad litem).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Kaitlin A. Rhine, appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, adopting the magistrate's decision denying her motion for legal custody of her two children, M.R. (D.O.B. July 12, 2012) and J.R. (D.O.B. February 23, 2014), and granting legal custody to the children's

paternal grandmother, Kimberly McQuaid. For the reasons discussed in this opinion, we affirm.

{¶2} On November 7, 2015, the Portage County Sheriff's Department was called and found appellant's children, M.R., J.R., and W.R. (brother of the other children who is in father, William Rhine's, custody) outside the family home unsupervised, without any clothes, yelling and crying for their father. Upon entering the home, the officers observed it in a "deplorable condition" and concluded it was unsafe for the children. One of the children alerted the officers that appellant was "in the pantry sleeping with her tongue hanging out." Appellant had a history of alcohol abuse, and although she claimed she had a seizure, reports indicated she still drank. Appellant was subsequently charged with child endangering and placed on probation.

{¶3} On November 9, 2015, the Portage County Department of Job and Family Services ("PCDJFS") filed a complaint alleging the subject children were abused, neglected, and dependent. An adjudicatory hearing was held and PCDJFS dismissed the allegations of abuse and neglect. On December 16, 2015, the court issued an order concluding the children were dependent due to conditions of the home and the parents' failure to supervise the children. On January 12, 2016, the court granted temporary custody of the children to PCDJFS. A case plan was developed for appellant and adopted by the court.

{¶4} Several motions for six-month extensions were filed and, after hearings, the court extended the order of temporary custody. Ultimately, on July 21, 2017, PCDJFS filed a motion for change of custody and to terminate the case. Appellant

2

subsequently filed a motion for legal custody. On November 21, 2017, the trial court held a hearing on the motions.

{¶5} At the hearing, Alex Bevere, appellant's caseworker since August of 2017, testified appellant's case plan required her to go to mental health counseling due to her anxiety and depression and obtain alcohol counseling. She was referred to Coleman Professional Services, where, over the course of over fourteen months, she only attended three appointments and was discharged for her failure to participate. Ms. Bevere testified appellant was also referred to several other facilities to address her alcohol problem. She was first referred to Summa Health, from which she was discharged for failing to show at her appointments. In April 2017, she was referred to CommQuest Recovery to address both mental health and alcohol issues. As of the hearing date, Ms. Bevere testified appellant had been uncooperative and refused to admit she had an alcohol-abuse problem. Appellant asserted she had been sober since May of 2017, but admitted she had one drink in September 2017. Appellant testified that, in her view, having one drink, from time-to-time, no matter the size, does not change her sobriety date.

{¶6} Ms. Bevere testified appellant tested positive for methadone in October 2016. Appellant had not previously nor did she subsequently test positive for any illicit drug. She explained, however, her live-in boyfriend, Anthony Milini, has been using methadone for seven years. Appellant explained she tested positive because she kissed him after he consumed a dose. Appellant also asserted Mr. Milini takes the drug for chonic pain; Mr. Milini, however, ultimately admitted to Ms. Bevere that he is on

3

methadone because he was a former heroin addict. Appellant claimed she did not know why he made this admission as she was unaware of his past history as an addict.

{¶7} Pursuant to her case plan, appellant was also required to remedy the "deplorable condition" of her home. Ms. Bevere testified both she and her predecessor case worker, had difficulty gaining access to the home at which she and Mr. Milini reside. Finally, before the hearing, Ms. Bevere testified she was able to view the home. She stated it was small, but in satisfactory condition. It included two bedrooms and the spare bedroom was notably small and filled with boxes. She stated there were no beds available and therefore concluded the home, in its current state, was not a safe and stable place for the children. She further expressed concerns about Mr. Milini's use of methadone and the fact that he is the only individual listed on the lease. In her view, if the couple broke up, appellant would have no place to live which would significantly impact the children.

{¶8} Ms. Bevere testified the case plan required appellant to pay child support, which she did consistently. Appellant works at a bar and has had no difficulty meeting her obligations.

{¶9} According to Ms. Bevere, appellant does not consistently make her visitations with the children. And, when she attends, it is rare for her to interact. Appellant blamed her spotty attendance on her job; moreover, Ms. Bevere observed that, on more than one occasion, appellant attended visitations smelling of alcohol. PCDJFS did not test appellant for alcohol consumption on these occasions and appellant stated that if she smelled of alcohol, it is because she works at a bar and spills alcohol on herself regularly.

4

{¶10} Ms. Bevere testified appellant's son, M.R., had been previously assessed with a form of autism and/or severe anxiety. Although the child requires special care, appellant denies the assessment and simply characterizes the child as "special." This denial caused Ms. Bevere concern because it indicated appellant would be unwilling, if not unable, to fully provide for M.R.'s care and provide him the necessary attention to address his issues.

{¶11} Ms. Bevere pointed out that the children's paternal grandmother, Ms. McQuaid, was a suitable and willing relative to assume custody. Although Ms. McQuaid lives in Missouri, an Interstate Compact was completed and she was found to be fit to be legal custodian. Ms. McQuaid testifed she has been involved with the children since their birth. The children are bonded with Ms. McQuaid and she is capable of attending to M.R.'s special needs.

{¶12} Ms. Bevere testified appellant has had two years to address the issues identified in her case plan and she has failed to satisfactorily address any of the points. And, because appellant denies her alcohol problem and disputes M.R.'s diagnosis, it did not appear she would be capable of fully complying with the case plan. Accordingly, Ms. Bevere recommended the court terminate PCDJFS' temporary custody and grant legal custody to Ms. McQuaid. This recommendation was echoed by Aaron Heavner, the children's guardian ad litem.

{¶13} Appellant testified that she had recently acquired two twin beds in preparation to take custody of the children. And, despite Ms. Bevere's testimony, appellant stated she felt like she had completed all her case-plan goals.

5

{¶14} The magistrate filed her decision and granted custody to Ms. McQuaid thereby denying appellant's motion. Appellant filed objections and, after a hearing on appellant's objections, the trial court overruled appellant's objections and adopted the magistrate's decision. Appellant appeals and assigns the following as error:

{¶15} "The trial court's decision of placing the children in the legal custody of paternal grandmother was against the manifest weight of the evidence."

{¶16} Unlike in a permanent custody proceeding, where an agency's burden is by clear and convincing evidence, the standard in legal custody proceedings is a preponderance of the evidence. *In re S.D.,* 5th Dist. Stark Nos. 2013CA0081, 2013CA0082, 2013-Ohio-5752, ¶32; *In re A.C.,* 12th Dist. No. CA2006-12-105, 2007-Ohio-3350 at ¶14. "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011-Ohio-3361, ¶14. Consequently, we review a trial court's decision to award a party legal custody of an abused, neglected, or dependent child for an abuse of discretion, and we afford its decision "the utmost deference." *In re E.W.,* 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, ¶18, citing *Miller v. Miller,* 37 Ohio St.3d 71, 74 (1988). "The phrase 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason nor the record." *In re K.Q.*, 11th Dist. Ashtabula No. 2017-A-0060, 2018-Ohio-906, ¶14.

{¶17} Once a trial court adjudicates a child abused, neglected, or dependent, R.C. 2151.353(A)(3) authorizes the court to "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal

6

custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

{¶18} "'Legal custody' means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(B)(21).

{¶19} Although legal custody is intended to be permanent in nature, R.C. 2151.42(B), it "is not as drastic a remedy as permanent custody because a parent retains residual rights and has the opportunity to request the return of the children." *In re Memic,* 11th Dist. Lake Nos. 2006-L-049, 2006-L-050, and 2006-L-051, 2006-Ohio-6346, ¶ 24 (citations omitted).

{¶20} Although there is no statutory mandate that the factors in R.C. 3109.04(F) be expressly considered and balanced before fashioning an award of custody under R.C. 2151.353(A)(3), a juvenile court is certainly entitled to consider those factors, as well as any other relevant factors in making its custody determination. *In re Fulton,* 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, ¶11; *In re G.M.,* 8th Dist. No. 95410, 2011-Ohio-4090, ¶16. Indeed, the juvenile court should consider all factors relevant to the best interest of the child, including, but not limited to any applicable factors in R.C. 3109.04(F) prior to granting legal custody pursuant to R.C. 2151.353(A)(3). *In re Fulton* at ¶11. Those factors are as follows:

{¶21} (a) The wishes of the child's parents regarding the child's care;

{¶22} (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and

7

concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

{¶23} (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

{¶24} (d) The child's adjustment to the child's home, school, and community;

{¶25} (e) The mental and physical health of all persons involved in the situation;

{¶26} (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

{¶27} (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

{¶28} (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [certain specified criminal offenses];

{¶29} (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

{¶30} (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶31} Appellant argues that, based upon the foregoing factors, she should have been awarded custody of the children. She maintains she has adequately addressed the issues that led to the removal of the children and has complied with the requirements of the case plan. She underscores that she is employed, has housing, and is willing and able to care for her children. She also underscores that Ms. McQuaid

8

lives out-of-state and awarding her custody will essentially severe the sibling relationship the children could have with their other brother, W.R.

{¶32} In adopting the magistrate's decision, the trial court emphasized Ms. Bevere's testimony that appellant had done very little to meet the goals of her case plan, despite having two years to do so. The court noted appellant failed to make appointments to address her mental health and alcohol issues. The court also underscored that appellant's current living arrangement with Mr. Millini was problematic. The court noted he was a recovering heroin addict on methadone; and, because he was the sole leaseholder, mother would have no place to stay if they did not remain a couple. The court additionally pointed out appellant's denial of M.R.'s autistic-spectrum assessment and expressed concern that appellant would be unable to attend to the child's special needs. The court also highlighted Ms. Bevere's belief that appellant still has issues with alcohol, even though appellant denies this.

{¶33} Alternatively, the court pointed out Ms. McQuaid was found fit for custody and financially able to care for the children. It found Ms. McQuaid is bonded with them and they are attached to her. It additionally found Ms. McQuaid has taken steps to make a smooth transition for the children were they to move to Missouri. The court found that removing the children from Ohio was an important consideration. It also determined, however, it was not a determinative consideration.

{¶34} In light of the foregoing, the court found granting legal custody to Ms. McQuaid was in the best interests of the children. Although the court did not specify which of the R.C. 3109.04(F) factors it considered, its findings and conclusions demonstrate it considered all factors relevant to its disposition. The trial court's findings

9

are supported by the record and also support its legal conclusion. We therefore hold the trial court did not abuse its discretion in awarding legal custody to Ms. McQuaid.

{¶35} Appellant's assignment of error lacks merit.

{¶36} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.


THOMAS R. WRIGHT, P.J.,

TIMOTHY P. CANNON, J.,

concur.