[Cite as *In re A.R.*, 2019-Ohio-2166.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

IN THE MATTER OF: A.R.        :      **O P I N I O N**

                                     :

                                       **CASE NO. 2018-A-0078**

Civil Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division.
Case No. 2018 JC 00023.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Appellee, Ashtabula County Children Services Board).

*Eileen Noon Miller*, Law Offices of Eileen Noon Miller, LLC, 6900 Sutherland Court, P.O. Box 1861, Mentor, OH 44060 (For Appellant, Pamela Means).

*Jodi M. Blankenship*, P.O. Box 970, Painesville, OH 44077 (Guardian ad litem).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Pamela Means ("Mother"), appeals a judgment in the Ashtabula County Court of Common Pleas, Juvenile Division, overruling her objections to the magistrate's decision, which awarded legal custody of A.R. (d.o.b. 09/13/2000) and A.R. (d.o.b. 02/23/2006) to Miguel Rios ("Father") and terminated protective supervision by appellee, Ashtabula County Children Services Board ("ACCSB"). Subsequently, the case regarding the older child was dismissed because she is now 18 years of age; only the

case regarding A.R. (d.o.b. 02/23/2006) ("the child") is before us. Upon review of the record, the trial court's conclusions concerning the best interest of the child are supported by competent, credible evidence. Accordingly, we affirm the judgment.

{¶2} ACCSB filed a complaint for temporary custody on February 23, 2018, after being granted ex parte custody of the child following an inspection of Mother's home in response to a complaint about the well-being of the child. During that inspection, ACCSB determined that Mother's home was unsafe and unsanitary, prompting the filing of the complaint and subsequent custody dispute.

{¶3} At an Adjudicatory Hearing on March 21, 2018, the parents stipulated to a finding of Dependency as alleged and stipulated the family is in need of services.

{¶4} At the dispositional hearing on April 21, 2018, the child was placed in the temporary custody of Father, with protective supervision granted to ACCSB. A case plan was implemented to address various concerns regarding Mother, including the condition of her home, her mental health issues, and her lack of income. Father's lone requirement under the case plan was to provide for the child while she was in his custody.

{¶5} On May 17, 2018, ACCSB filed a motion to terminate protective supervision and for legal custody of the child to be granted to Father. The matter was originally scheduled to be heard on June 20, 2018; however, the hearing was converted to a pretrial, and the matter was ultimately heard on August 21, 2018, during the semi-annual review hearing.

{¶6} At the hearing, the following testimony was heard by the trial court.

{¶7} On behalf of ACCSB, supervisor Terri Jo Mickle testified regarding her knowledge of the initial investigation of Mother's home, custody of the child, and progress

2

of both parents with regard to the established case plan. Mickle testified that Mother was minimally compliant with cleaning the residence, she was minimally compliant with attempting to treat her mental health issues, and she had not secured a source of income. These shortcomings were attributed to both the physical limitations of Mother—who has substantial physical difficulties due to previous injuries to both knees—and Mother's unwillingness to cooperate with home visits or mental health facilities. Mickle testified that Father, whose only requirement was to provide for the child, had met his requirement under the case plan. Mickle's testimony was that she believed it to be in the best interest of the child to remain with Father.

{¶8} Mother offered rebuttal testimony on her own behalf. She confirmed that the cleaning of the residence was progressing slowly due to her handicap and stated that she had a friend helping when the friend had free time. She also confirmed that, at the time of the hearing, the residence was not suitable for the child to live because the child's room was not habitable.

{¶9} When questioned about the progress of her mental health treatment and securing an income, she offered explanations for each. She stated that she had attended two sessions for mental health treatment and that she did not like the facility. She stated that she was seeking a new facility because she was not satisfied with the treatment she received. Regarding her income, Mother stated that she previously worked for Ashtabula County Board of MRDD before her knee injuries, and she was unaware of whether she was still employed by them despite not having performed work or received a salary in nearly ten years. When asked if she considered herself an employee, she stated, "[w]ell, I mean, I never resigned. Like I said, I don't know. I mean, I'm not getting PERS through

3

them." Mother went on to claim that she supported herself by bartering with a neighbor for services and utilizing an inheritance from the death of her father.

{¶10} A substantial portion of Mother's testimony was regarding her concerns of alcohol and drug use of the child while in the custody of Father. There was concern over Father's paramour drinking while supervising the child, which Mother had discussed at length with the child in private. These discussions, through text messages, involved Mother telling the child things such as "She's an alcoholic like her daughter said," "And she threatened to kill her daughter," "She needs to watch herself," "I would die for you," and other messages the trial court found to be inappropriate communication with a 12-year-old child. Mother did not find any of her text messages to be inappropriate.

{¶11} Following this testimony from ACCSB and Mother, guardian ad litem Jodi Blankenship ("GAL") testified regarding her recommendation. She was in agreement with ACCSB that it was in the best interest of the child to remain in the custody of Father. She acknowledged there were substantial behavioral problems with both children which would take substantial time to remedy; however, she stated that (1) Father's home was suitable, and Mother's home, by her own admission, was not; (2) Father was providing for the child and had a source of income, whereas Mother did not; and (3) the child was doing better since being placed in the custody of Father.

{¶12} Immediately following the hearing, the magistrate issued a decision awarding legal custody of the child to Father and terminating protective supervision. Mother timely filed objections to the magistrate's decision, which were overruled in a judgment entry filed September 10, 2018, adopting and approving the decision.

**{¶13}** Mother filed a timely notice of appeal and raises three assignments of error for our review. Because each of the errors addresses alleged deficiencies in the trial court's determination of legal custody in the matter, we consider the assignments out of order.

**{¶14}** Mother's second assignment of error states:

**{¶15}** "The trial court failed to consider whether Appellant would be able to parent the child[] within a reasonable time."

**{¶16}** "The court may amend a dispositional order in accordance with division (F)(2) of section 2151.353 of the Revised Code at any time upon its own motion or upon the motion of any interested party." R.C. 2151.417(B). "A trial court has the authority 'to award legal custody of an adjudicated dependent child to either parent in the disposition phase of the dependency proceedings.'" *In re Memic*, 11th Dist. Lake Nos. 2006-L-049, *et seq.*, 2006-Ohio-6346, ¶24, quoting *In re Cloud* (May 19, 1997), 12th Dist. Butler No. CA96-01-002, 1997 WL 264264, *2 (May 19, 1997), citing R.C. 2151.353(A)(3). "'Legal custody vests in the custodian the physical care and control of the child while residual parental rights and responsibilities remain intact.'" *Id.*, quoting *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶7, citing R.C. 2151.011(B)(21).

**{¶17}** Legal custody is significantly different than the termination of parental rights—despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities. R.C. 2151.353(A)(3)(c). "Thus, legal custody is not as drastic a remedy as permanent custody because a parent retains residual rights and has the opportunity to request the return of the children." *Memic*, *supra*, at ¶24 (citations omitted). For this reason, "[u]nlike in a permanent custody

5

proceeding, where an agency's burden is by clear and convincing evidence, the standard in legal custody proceedings is a preponderance of the evidence." *In re: M.D.R.*, 11th Dist. Portage Nos. 2018-P-0032 & 2018-P-0033, 2019-Ohio-1054, ¶16 (citations omitted).

{¶18} "A trial court has broad discretion in proceedings involving the care and custody of children." *Id.*, quoting *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶14 (citation omitted). "Consequently, we review a trial court's decision to award a party legal custody of an abused, neglected, or dependent child for an abuse of discretion, and we afford its decision 'the utmost deference.'" *Id.*, quoting *In re E.W.*, 4th Dist. Washington Nos. 10CA18 et seq., 2011-Ohio-2123, ¶18.

{¶19} "'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason." *Carson v. Holmes*, 11th Dist. Portage No. 2010-P-0007, 2019-Ohio-4199, ¶23, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). Put another way, an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). "Further, an abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Carson*, *supra*, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶20} "'Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact.'" *In re D.H.*, 11th Dist. Ashtabula No. 2017-A-0081, 2018-Ohio-630, ¶18, quoting *In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶37.

6

**{¶21}** Courts look to the best interest factors contained in R.C. 3109.04(F) when determining the best interest of a child. That statute states, in pertinent part:

> (1) In determining the best interest of a child pursuant to this section the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; * * *
>
> (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

7

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶22} In determining custody under R.C. 2151.353, the juvenile court "'should consider the totality of the circumstances, including, to the extent they are applicable, the best interest factors set forth in R.C. 3109.04(F).'" *Memic*, *supra*, at ¶26, quoting *In re Pryor*, 86 Ohio App.3d 327, 336 (4th Dist.1993). "However, there is 'no statutory mandate that they be expressly considered and balanced together before fashioning an award of custody under R.C. 2151.353(A)(3).'" *In re Mitchell*, 11th Dist. Lake Nos. 2002-L-078 & 2002-L-079, 2003-Ohio-4102, ¶14, quoting *Pryor*, *supra*, at 336.

{¶23} While the ability to parent within a reasonable amount of time is not one of the statutory factors, it may be considered as a circumstance when determining the best interest of the child. Here, a review of the trial court record, including a transcript of the August 21, 2018 semi-annual review hearing and the magistrate's decision, does not suggest the trial court failed to consider this circumstance and balance it with the statutory factors and other circumstances. The trial court was presented with an abundance of competent, credible evidence with which to support the determination that a grant of legal custody to Father was the option in the best interest of the child. The magistrate addressed each best interest factor individually in detail before reading its conclusion. The following evidence supported a grant of legal custody to Father:

1. The child's wishes from three months prior, according to the GAL, were to remain with Father.

2. Mother had been minimally compliant with the case plan, including not remedying the unsanitary residence, not receiving all recommended mental health treatment, and not acquiring a source of income.

3. Mother testified that the conditions of her home were not acceptable to have the child returned at the time of the hearing and that progress in cleaning the home was proceeding slowly due to her physical limitations.

4. Mother's parenting judgment was questioned by the court based on the inappropriate discussions with the child, as well as Mother's inability to recognize that the discussions were inappropriate.

5. Various medical, educational, and emotional issues existed with the child at the time of removal, and they were presently being addressed by Father while he maintained custody.

6. Mother continued to have unaddressed mental health issues.

7. Father was likely to be compliant with any future court orders, whereas Mother was currently minimally compliant with her case plan.

8. Accusations made by Mother regarding physical abuse and drug and alcohol abuse in Father's household were duly investigated and determined to be unsubstantiated,

9. ACCSB's recommendation was that Father be awarded legal custody.

10. The GAL's recommendation was that Father be awarded legal custody.

{¶24} Given this competent and credible evidence, we find the decision by the trial court in adopting the magistrate's decision, entering an order of legal custody to Father, and terminating protective supervision was not an abuse of discretion. The trial court's findings are supported by the testimony and evidence submitted to the court, the statutory factors and circumstances, and the recommendations of ACCSB and the GAL.

{¶25} Mother's second assignment of error is without merit.

{¶26} Mother's first assignment of error states:

9

**{¶27}** "The trial court did not properly consider the concerns raised by the GAL regarding the Father, nor the deficiencies in the GAL's investigation."

**{¶28}** Mother's first assignment of error is based on the Ohio Rules of Superintendence. Sup.R. 48(D) outlines general responsibilities and practices of a GAL through the course of their investigation to make a determination as to the best interest of the child.

**{¶29}** "[V]iolations of the Rules of Superintendence, however, are not grounds for reversal." *Allen v. Allen*, 11th Dist. Trumbull No. 2009-T-0070, 2010-Ohio-475, ¶31. "The 'Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts.'" *Id.*, quoting *State v. Singer*, 50 Ohio St.2d 103, 109-110 (1977). "'They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants.'" *Id.*, quoting *State v. Gettys*, 49 Ohio App.2d 241, 243 (3d Dist.1976). "Thus, it has been held that the courts can determine the weight to be given to the guardian ad litem's recommendation when certain items in Sup.R. 48(D) are not addressed." *In re A.M.*, 11th Dist. Trumbull No. 2016-T-0051, 2016-Ohio-8433, ¶26 (citation omitted).

**{¶30}** Even considering the duties detailed in Sup.R. 48(D), Mother has not established that the GAL investigation was deficient or that the trial court did not properly

consider the recommendations made by the GAL at the hearing. The following actions of the GAL are reflective of the duties proposed by Sup.R. 48(D):

> (a) Meeting with and interviewing the child, albeit the last meeting was several months before the hearing;

> (b) Attempting to meet with the mother, although unsuccessful, as Mother testified she was never available at the residence to meet with the GAL;

> (c) Visiting the child at Father's home;

> (d) Ascertaining the wishes of the child, as the GAL testified during the hearing that she wished to remain with Father;

> (e) Reviewing pleadings and other relevant court documents;

> (f) Reviewing the educational records pertaining to the child;

> (g) Recommending mental health assessments and treatment for the child and Mother.

{¶31} Given the GAL's involvement and efforts, the trial court was within its discretion to hear the testimony and cross-examination, weigh it accordingly with the previously discussed factors and circumstances, and make a determination that an award of legal custody to Father was in the best interest of the minor child.

{¶32} Mother's first assignment of error is without merit.

{¶33} Mother's third assignment of error states:

{¶34} "The trial court did not properly consider the option of an order granting temporary custody as opposed to permanent [sic] custody of the child[]."

{¶35} Of note, the trial court did not grant permanent custody of the child to Father. As discussed in this opinion, that legal distinction is significant. The trial court directly and properly considered its options for the child. The magistrate made the following findings and conclusions of law before issuing a decision on legal custody of the child:

11

> When a child has been adjudicated abused, neglected, or dependent, a juvenile court has a number of dispositional alternatives available to it. See R.C. 2151.353(A). These dispositional alternatives include, among other things, committing the child to the permanent custody of the children-services agency, or awarding legal custody to a relative or any other person who has filed a petition for legal custody. *Id.* When choosing among these dispositional alternatives, the juvenile court's focus is on the best interest of the children. *In re Allah*, 1st Dist. Hamilton No. C-040239, 2005-Ohio-1182, ¶10.

{¶36} Based on this recognition of the options available, along with the previously discussed considerations for determining the best interest of the child, we conclude that the trial court properly considered the options available for the child before ordering that Father be granted legal custody.

{¶37} Mother's third assignment of error is without merit.

{¶38} The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

12