[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Forsthoefel*, Slip Opinion No. 2022-Ohio-3580.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3580

THE STATE EX REL. CINCINNATI ENQUIRER *v.* FORSTHOEFEL, JUDGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cincinnati Enquirer v. Forsthoefel*, Slip Opinion No. 2022-Ohio-3580.]**

*Mandamus and prohibition—Rules of Superintendence for the Courts of Ohio— Common pleas court judge's order sealing documents in a dissolution case was overbroad and was not supported by clear and convincing evidence— Writ of prohibition granted barring judge from enforcing sealing order and writ of mandamus granted ordering judge to vacate sealing order and to conduct a proper review of the documents pursuant to Sup.R. 44 and 45.*

(No. 2021-0203—Submitted April 12, 2022—Decided October 11, 2022.)

IN MANDAMUS and PROHIBITION.

————————

**Per Curiam.**

{¶ 1} In this original action, relator, the Cincinnati Enquirer ("the Enquirer"), requests writs of mandamus and prohibition against respondent, Ronald P. Forsthoefel, a judge on the Ashland County Common Pleas Court. The

mandamus claim asks us to order Judge Forsthoefel to vacate his order sealing documents in a dissolution case and to permit public access to the documents, and the prohibition claim asks us to bar him from enforcing his sealing order. We earlier granted an alternative writ ordering the submission of evidence and briefs, 163 Ohio St.3d 1499, 2021-Ohio-2307, 170 N.E.3d 886, and we now grant the requested writs in part.

## I. BACKGROUND

{¶ 2} In April 2020, Joshua Mandel and Ilana Mandel filed in the Ashland County Common Pleas Court, Domestic Relations Division, a marriage-dissolution petition and a motion to seal 22 related case documents, including the dissolution petition, the separation agreement, and the shared-parenting plan. The motion described Joshua as a "former State Treasurer of Ohio and member of the Ohio House of Representatives" and Ilana as coming from a "very public family in the state" with ties to "national financial and civic communities." The Mandels requested sealing to "preserve [their] right to protect the confidentiality of personal financial information and help protect the privacy, safety, and security of their minor children." The motion cited no legal authority to support sealing.

{¶ 3} Judge Forsthoefel granted the motion the day it was filed, summarily concluding that the motion was "well-taken" and stating that 21 of the 22 documents would be "subject to unsealing and review only upon further order of the Court." The lone document he did not seal had not been presented to him for sealing. He did not hold a hearing in deciding the motion, and his order does not illuminate his reasoning.

{¶ 4} In February 2021, after the Enquirer filed its complaint in this case, members of Joshua's staff provided the Enquirer with documents related to the dissolution case. Around this time, the Enquirer published an article titled " 'Differences have arisen': Mandel discloses divorce records amid Senate bid."

According to Judge Forsthoefel, the information contained within the article is consistent with the documents that he placed under seal.

## II. ANALYSIS

### A. Mootness

{¶ 5} Judge Forsthoefel argues that this case is moot because the Enquirer has received documents relating to the dissolution case. In support, he cites *State ex rel. Toledo Blade Co. v. Ohio Bur. of Workers' Comp.*, 106 Ohio St.3d 113, 2005-Ohio-3549, 832 N.E.2d 711, ¶ 16, in which this court concluded that a newspaper company's mandamus claim seeking the production of records under the Public Records Act, R.C. 149.43, was moot because the respondents had provided the records.

{¶ 6} But Judge Forsthoefel misunderstands the type of relief that the Enquirer seeks. The Enquirer does not seek the production of documents; rather, it seeks an order directing Judge Forsthoefel to vacate his sealing order and provide public access to the sealed documents and an order barring him from enforcing his sealing order. Additionally, the relief sought by the Enquirer in its complaint pertains to the documents in their entirety; Judge Forsthoefel acknowledges that the copies provided to the Enquirer by the Mandels were redacted. We therefore determine that this case presents a live controversy. *See Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970) (it is the duty of courts "to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect" and "to refrain from giving opinions on abstract propositions * * * or advice upon potential controversies").

### B. Mandamus

{¶ 7} The Enquirer relies on the Rules of Superintendence to support its mandamus request. We have observed that mandamus is the appropriate remedy to enforce provisions of the Rules of Superintendence requiring courts to provide

public access to court records. *See State ex rel. Cincinnati Enquirer v. Lyons*, 140 Ohio St.3d 7, 2014-Ohio-2354, 14 N.E.3d 989, ¶ 11, citing Sup.R. 47(B).

{¶ 8} The rules provide that "[c]ourt records are presumed open to public access." Sup.R. 45(A). The term "court record" means "both a case document and an administrative document regardless of physical form or characteristic, manner of creation, or method of storage." Sup.R. 44(B). Subject to certain exceptions, "case document" means a "document and information in a document submitted to a court or filed with a clerk of court in a judicial action or proceeding." Sup.R. 44(C). The rule excludes from the definition of a "case document" certain personal identification information (Social Security numbers and financial-account numbers, for instance), Sup.R. 44(C)(2)(b) and (H), as well as particular types of documents filed in domestic-relations cases, Sup.R. 44(C)(2)(h).

{¶ 9} A party to a judicial action may by written motion request that the court restrict public access to a case document or information within it. Sup.R. 45 (E)(1). "A court shall restrict public access * * * if it finds by clear and convincing evidence that the presumption of allowing public access is outweighed by a higher interest after considering" the factors of Sup.R. 45(E)(2)(a) through (c). Sup.R. 45(E)(2). A court must use the "least restrictive means available" when restricting public access. Sup.R. 45(E)(3).

*1. Adequate remedy*

{¶ 10} In *State ex rel. Cincinnati Enquirer v. Shanahan*, 166 Ohio St.3d 382, 2022-Ohio-448, 185 N.E.3d 1089, ¶ 18, we recently concluded that because Sup.R. 47(B) allows a mandamus action as a remedy for a person aggrieved by a court's failure to comply with Sup.R. 44 through 47, the person need show only a clear legal right to relief and a clear duty on the part of the respondent to provide it and does not need to also show the lack of an adequate remedy in the ordinary course of law. This conclusion forecloses Judge Forsthoefel's argument that the Enquirer has an adequate remedy by way of Sup.R. 45(F)(1)'s motion procedure,

which provides that "[a]ny person, by written motion to the court, may request access to a case document or information in a case document that has been granted restricted public access."

*2. Clear legal right and clear legal duty*

{¶ 11} We conduct our clear-legal-right and clear-legal-duty analyses by "review[ing] the correctness of [the] [j]udge['s] order[]." *Shanahan* at ¶ 19. Our review of the order is de novo. *Id.*

{¶ 12} The Enquirer argues that it is entitled to a writ of mandamus for two reasons. First, it says that Judge Forsthoefel lacked *clear and convincing evidence* to support restricting public access to the Mandels' case documents. Second, it says that Judge Forsthoefel's sealing order departs from the requirement that he use the *least restrictive means available* in restricting public access.

{¶ 13} In restricting public access, a court must consider "[w]hether public policy is served by restricting public access," "[w]hether any state, federal, or common law exempts the document or information from public access," or "[w]hether factors that support restriction of public access exist, including risk of injury to persons, individual privacy rights and interests, proprietary business information, public safety, and fairness of the adjudicatory process." Sup.R. 45(E)(2)(a) through (c). If a court decides to restrict public access to information in a document, then one option it has is to "[r]edact[] the information rather than limiting public access to the entire document." Sup.R. 45(E)(3)(a).

{¶ 14} In *Shanahan*, 166 Ohio St.3d 382, 2022-Ohio-448, 185 N.E.3d 1089, we granted a writ of mandamus ordering a trial judge to allow public access to a police officer's affidavit that the judge had sealed over concerns that the officer and his family were at risk of harm. The judge's sealing order cited an uptick in violence against law-enforcement officers and a threat that someone might publish the officer's personal information. *Id.* at ¶ 6. Although the judge's order did not expressly say so, we surmised that the judge's ruling stemmed in part from a social-

media post that the officer had attached to his affidavit. *Id.* at ¶ 7. In the post, the author stated that he was thinking about publicizing the officer's name, address, and phone number. We determined that the judge's order was not supported by clear and convincing evidence of risk of injury to persons, individual privacy rights and interests, or public safety, Sup.R. 45(E)(2). First, the social-media post did not express a clear intent to publicize the officer's personal information. Second, there was no evidence of a threat of physical harm directed at the officer or his family. And third, because the social-media poster already had the officer's information, disclosing that information would not have increased the risk that the poster would publish it.

**{¶ 15}** Our analysis in this case is more straightforward than it was in *Shanahan* because of the lack of evidence to support Judge Forsthoefel's order. In *Shanahan*, the judge's reasoning in support of restricting public access was apparent from the face of her order and the evidence she found persuasive was inferable from the documents the officer had filed. Here, Judge Forsthoefel simply announced, without any analysis, that the Mandels' motion was "well-taken." He did not disclose what evidence supported his decision. Neither Joshua nor Ilana submitted an affidavit explaining why sealing was necessary to protect their interests. And the joint motion to seal that Joshua's attorney filed, which fleshes out the Mandels' arguments in support of restricting public access, is not evidence. *See Woodward v. Woodward*, Twelfth Dist. Warren No. 404, 1981 WL 5199, *1 (Sep. 9, 1981) ("The arguments of attorneys are not evidence").

**{¶ 16}** The fact that Judge Forsthoefel went so far as to seal the case-designation sheet is, as the Enquirer points out, perhaps the most glaring example of the lack of clear and convincing evidence supporting his order. The case-designation sheet asks for the parties' names, the case number, and the type of complaint (e.g., dissolution with minor children)—basic information that the Mandels disclosed in their motion to seal and that the parties have freely discussed

in briefing. *See* http://www.ashlandcommonpleas.com/index_files/Page341.htm (template version of the Ashland County Common Pleas Court domestic-relations case-designation sheet). Judge Forsthoefel does not explain how it could be proper for a court to restrict public access to something as innocuous as the case-designation sheet.

{¶ 17} The sweeping nature of Judge Forsthoefel's sealing order is also at odds with Sup.R. 45(E)(3)'s requirement that he use the "least restrictive means available." Not only does his order fail to explain why he thought the wholesale sealing of 21 case documents was the only legally proper way of resolving the Mandels' motion, it also fails to disclose whether he considered a less restrictive means of limiting public access, such as redaction, *see* Sup.R. 45(E)(3)(a).

{¶ 18} Judge Forsthoefel responds in his brief by pointing to an affidavit he filed in this case, in which he says that he performed the analysis prescribed by the Rules of Superintendence. But this argument does not square with his order, which fails to cite, let alone discuss, the Rules of Superintendence. In any event, Judge Forsthoefel's affidavit is beside the point. This court is reviewing the correctness of Judge Forsthoefel's order, not his after-the-fact descriptions of that order.

{¶ 19} Next, Judge Forsthoefel points to the order itself, noting that it names the 22 documents that the parties requested be sealed, it shows he crossed out one of the 22 documents on the list and initialed the change, and it shows he signed the order. But the superintendence rules require more than a judge's editing and signing of an order to justify restricting public access—they require a court to find through clear and convincing evidence that restricting public access is justified and they require the court to use the least restrictive means available. What is more, Judge Forsthoefel exaggerates the degree to which his edit of the list is evidence that he scrutinized the documents offered for sealing. The only edit he made was to strike a document from the list because, as he noted in his order, it had "[n]ot [been] filed with the Clerk of Courts."

**{¶ 20}** Last, Judge Forsthoefel points to dicta in *State ex rel. Richfield v. Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, which he claims supports his assertion that mandamus cannot lie to correct a result; rather, he says, mandamus can lie only to force him to make a ruling. *Id.* at ¶ 11 (" 'Mandamus will not lie to control judicial discretion, even if that discretion is abused' "), quoting *State ex rel. Rashada v. Pianka*, 112 Ohio St.3d 44, 2006-Ohio-6366, 857 N.E.2d 1220, ¶ 3. *Shanahan*, which rejected this standard, forecloses this argument. 166 Ohio St.3d 382, 2022-Ohio-448, 185 N.E.3d 1089, at ¶ 19.

**{¶ 21}** The Enquirer has established that Judge Forsthoefel's order was overbroad and was not supported by clear and convincing evidence. We therefore conclude that the judge erred in issuing the order and the Enquirer is entitled to relief.

**{¶ 22}** We note, however, that Judge Forsthoefel asserted in his affidavit that some of the documents contain information that would not qualify as a "court record" under Sup.R. 44. And the Enquirer appears to concede this point, saying: "Although some of the information in the twenty-two case documents the [Mandels'] Motion asked the Court to seal would fall within one of the domestic relations exemptions set forth in [Sup.R. 44](C)(2), it is clear that is not the case for all."

**{¶ 23}** The documents subject to Judge Forsthoefel's order have not been filed with the clerk of this court, so we are unable to conclude whether any information contained within the documents is subject to exclusion under Sup.R. 44(C)(2). We therefore grant a writ of mandamus ordering Judge Forsthoefel to vacate his sealing order and to conduct a proper review of the documents that are the subject of his sealing order, pursuant to Sup.R. 44 and 45 and consistent with the analysis in this decision.

### *C. Prohibition*

**{¶ 24}** To prevail on its prohibition claim, the Enquirer must establish that Judge Forsthoefel is about to or has exercised unauthorized judicial power and that it lacks an adequate remedy in the ordinary course of law. *See State ex rel. Balas-Bratton v. Husted*, 138 Ohio St.3d 527, 2014-Ohio-1406, 8 N.E.3d 933, ¶ 15. In *Shanahan*, 166 Ohio St.3d 382, 2022-Ohio-448, 185 N.E.3d 1089, at ¶ 29, we summarily granted a writ of prohibition barring the trial judge from restricting access to the officer's affidavit, reasoning that because the relators had shown entitlement to a writ of mandamus, they were necessarily entitled to a writ of prohibition. Applying *Shanahan*'s logic here, we conclude that the Enquirer is entitled to a writ of prohibition because it has shown entitlement to a writ of mandamus.

### III. CONCLUSION

**{¶ 25}** We grant a writ of prohibition barring Judge Forsthoefel from enforcing his order sealing the documents filed in the dissolution case and grant a writ of mandamus ordering him to vacate his sealing order and to conduct a proper review of the documents pursuant to Sup.R. 44 and 45.

Writs granted.

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by DEWINE, J.

———————————

**KENNEDY, J., concurring in judgment only.**

**{¶ 26}** Relator, the Cincinnati Enquirer ("the Enquirer"), seeks (1) a writ of mandamus ordering respondent, Judge Forsthoefel, to vacate his order sealing the documents filed in the dissolution case at issue and (2) a writ of prohibition barring him from enforcing the order. The Enquirer cited the Rules of Superintendence in

support of its request for access to the lower-court records. A majority of this court has previously held that those rules govern the release of court records.

**{¶ 27}** But in my view, this court lacked the authority to issue substantive rules regarding the accessibility of court records through its Rules of Superintendence. Because the superintendence rules regulating judicial records abridge a substantive right of the people created by the Public Records Act, the Public Records Act should control the outcome of this case.

**{¶ 28}** Nevertheless, because the Enquirer was following the precedent of this court in seeking the records under Sup.R. 44 through 47 and because I agree with the result reached by the majority in this case, I concur in the court's judgment.

*Our rulemaking powers*

**{¶ 29}** This court is vested with two types of rulemaking power under the Ohio Constitution—the power to make rules for the superintendence of the courts and the power to make rules governing practice and procedure. Article IV, Sections (5)(A)(1) and (B) of the Ohio Constitution. The rules regulating judicial records are in the Rules of Superintendence.

**{¶ 30}** The purpose of giving this court general superintendence power over lower courts and the authority to promulgate rules was to remedy case-management problems that had caused backlogs in resolving cases. Marburger & Idsvoog, *Access with Attitude: An Advocate's Guide to Freedom of Information in Ohio* 151-152 (2011); Milligan & Pohlman, *The 1968 Modern Courts Amendment to the Ohio Constitution*, 29 Ohio St.L.J. 811, 821-822 (1968). As we recognized in *State v. Steffen*, 70 Ohio St.3d 399, 409, 639 N.E.2d 67 (1994), the Rules of Superintendence were "designed '(1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before

the courts." *Id.*, quoting *State v. Singer*, 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216 (1977).

**{¶ 31}** In granting us the power to promulgate rules of practice and procedure, the Ohio Constitution strictly prohibits this court from promulgating rules that "abridge, enlarge, or modify any substantive right," Article IV, Section 5(B). Therefore, to the extent that the Rules of Superintendence encroach on a substantive right, the Ohio Constitution strictly prohibits that exercise of that rulemaking power.

**{¶ 32}** Just as the Ohio Constitution empowers this court to promulgate rules of practice and procedure for the lower courts, Congress authorized the United States Supreme Court to promulgate procedural rules for the United States district courts and courts of appeals. 28 U.S.C. 2072(a). But the Rules Enabling Act is not without limitation. Like the Ohio Constitution, the Rules Enabling Act provides that those rules "shall not abridge, enlarge or modify any substantive right," 28 U.S.C. 2072(b).

**{¶ 33}** The United States Supreme Court has interpreted this limitation to mean that the rules must "really regulate[] procedure—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941). If the rule "relates merely to 'the manner and the means by which a right to recover is * * * enforced,' " it is "a rule of procedure" and valid; if the rule "operate[s] to abridge, enlarge or modify the rules of decision by which [a] court will adjudicate [a litigant's] rights," it is substantive and not valid. (Ellipsis added in *Murphree*.) *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 446, 66 S.Ct. 242, 90 L.Ed. 185 (1946), quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

*The Public Records Act and Sup.R. 44 through 47*

**{¶ 34}** The General Assembly codified the public's right to access government records in 1963 by enacting the Public Records Act, R.C. 149.43. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 81, 526 N.E.2d 786 (1988). This court has recognized that the act reflects the principle that "open government serves the public interest and our democratic system," *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20, and "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor," *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 17.

**{¶ 35}** The act requires a "person responsible for public records" to make copies of requested records available "within a reasonable period of time." R.C. 149.43(B)(1). The act defines "public record" as records that are kept by "any public office," R.C. 149.43(A)(1), which "includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of *any* function of government" (emphasis added), R.C. 149.011(A). Included in the definition of "state agency" is "any court or judicial agency." R.C. 149.011(B).

**{¶ 36}** As promulgated, the superintendence rules regulating judicial records and the release of those records—Sup.R. 44 through 47—do not govern the manner and means by which a public-record requester's rights are enforced. Instead, they wholly replace the Public Records Act with respect to certain court records and thereby alter the rules by which a court will adjudicate a public-record requester's rights.

**{¶ 37}** The superintendence rules define "court record," Sup.R. 44(B), (C)(1), and (G)(1), set forth what documents are not "court records," Sup.R. 44(C)(2) and (G)(2), require the omission of information that in some cases is

required by statute to be included,[1] Sup.R. 45(D) and 44(H), and define what "public access" means, Sup.R. 44(I). The superintendence rules also instruct courts and clerks of courts as to how court records should be made available to the public, Sup.R. 45, establish when and how courts may restrict public access to records, Sup.R. 45(E), and establish a method by which restricted records may be accessed, Sup.R. 45(F). The rules set forth which case documents are regulated by the Public Records Act and which are regulated by the Rules of Superintendence, depending on the commencement date of the action to which the case documents relate, Sup.R. 47(A), and authorize a person aggrieved by the failure of a court or a clerk of court to comply with Sup.R. 44 through 47 to file a complaint for a writ of mandamus, Sup.R. 47(B), but they do not require that the court or clerk of court provide the requested record in a reasonable time, and they afford no sanctions against a court or clerk of court for the failure to produce a record.

{¶ 38} This court has recognized that the legislature has plenary power to enact any law that does not conflict with the United States or Ohio Constitutions. *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 17. And this court has held that " '[b]efore any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision.' " *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, 941 N.E.2d 745, ¶ 10, quoting *Williams v. Scudder*, 102 Oho St. 305, 307, 131 N.E. 481 (1921). But this court's power to invalidate a statute "is circumscribed by the rule that laws are entitled to a strong presumption of constitutionality." *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16.

---

1. Under Sup.R. 45(D), parties are required to omit personal identifiers from case documents when submitting them to a court or filing them with a clerk of court. " 'Personal identifiers' means social security numbers, except for the last four digits." Sup.R. 44(H). R.C. Chapter 3105 covers divorce, alimony, annulment, and dissolution. R.C. 3105.72 states: "The record of any action instituted under this chapter shall include the social security numbers of both parties to the action."

**{¶ 39}** This court has never questioned the constitutionality of the General Assembly's inclusion of "any court or judicial agency" within the definition of "state agency" in R.C. 149.011(B). In fact, in *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 27, this court held that "any record used by a court to render a decision is a record subject to R.C. 149.43." In *State ex rel. Highlander v. Rudduck*, 103 Ohio St.3d 370, 2004-Ohio-4952, 816 N.E.2d 213, ¶ 19, a case involving records in a divorce proceeding, this court refused to accord a status to judicial records different from the status of nonjudicial records, stating, "The plain language of R.C. 149.43(C) * * * makes no such distinction, and we will not imply one." Therefore, this court has recognized the people's substantive right under the Public Records Act to have access to court records.

*Separation of powers*

**{¶ 40}** What exactly was the foundation for this court's belief that it has the power to promulgate superintendence rules to regulate the release of records of lower courts? It began with a letter.

**{¶ 41}** In a letter written by former chief justice Thomas J. Moyer to Ohio attorneys, he declared, "While the courts in Ohio have always acted in accordance with the Public Records Act, the act does not govern the courts." Moyer, *A message from the Chief Justice: Openness is foundation of Ohio Government*, 81 Ohio St. Bar Assn. Report 170, 171 (2008). A majority of this court relied on that letter as authority for the position that this court's superintending authority under the Ohio Constitution includes the power to regulate court records. *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, ¶ 16. The majority in *Parisi* agreed with the statement in the former chief justice's letter that an " 'important constitutional principle of separation of powers' required this court to *regulate judicial records* through its Rules of Superintendence." (Emphasis added.) *Id*., citing *Steffen*, 70 Ohio St.3d at

409, 639 N.E.2d 67, quoting *In re Furnishings for Courtroom Two*, 66 Ohio St.2d 427, 430, 423 N.E.2d 86 (1981) (" 'courts possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions' ").

{¶ 42} *Parisi* does not explain how the Public Records Act impinges on the judicial power vested in this court; it simply declares that it does. It cites no decision holding that the Public Records Act as applied to courts is constitutionally infirm. In fact, in the past, this court held invalid a local rule of court that "effectively for[bade] public access to public records, thereby conflicting with R.C. 149.43(B)." *State ex rel. Mothers Against Drunk Drivers v. Gosser*, 20 Ohio St.3d 30, 33-34, 485 N.E.2d 706 (1985). The majority in *Parisi* did not mention this court's decision in *Mothers Against Drunk Drivers*, let alone overrule it on the basis that R.C. 149.43 violates separation-of-powers principles. In fact, the majority in *Parisi* failed to consider any of the principles of the separation of powers and simply assumed that the Public Records Act no longer applied to court records.

{¶ 43} But that defies the constitutional limitation on our enumerated power to promulgate rules. Only properly promulgated rules of practice and procedure may supersede a statutory provision, and even those rules may not "abridge, enlarge, or modify" a substantive right. Ohio Constitution, Article IV, Section 5(B). In contrast, the constitutional provision authorizing this court to promulgate superintendence rules, Article IV, Section 5(A)(1), does not provide that those rules have the same force of law as rules of practice and procedure.

{¶ 44} As the Third District Court of Appeals explained,

"whereas rules of procedure adopted by the Supreme Court require submission to the legislature, rules of superintendence are not so submitted and, hence, are of a different category. They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of

concern to the judges of the several courts but create no rights in individual defendants."

*Larson v. Larson*, 3d Dist. Seneca No. 13-11-25, 2011-Ohio 6013, ¶ 13, quoting *State v. Gettys*, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (3d Dist.1976). And every appellate district has consistently recognized that the superintendence rules do not supersede statutes with which they are in conflict and do not create either substantive rights or procedural law. *See, e.g.*, *State v. Ventura*, 2016-Ohio-5151, 69 N.E.3d 189, ¶ 24 (1st Dist.); *State v. Keeble*, 2d Dist. Greene No. 03CA84, 2004-Ohio-3785, ¶ 17; *Larson*, 3d Dist. Seneca No. 13-11-25, 2011-Ohio-6013, at ¶ 13; *In re K.W.*, 2018-Ohio-1933, 111 N.E.3d 368, ¶ 99 (4th Dist.); *Sepich v. Bell*, 5th Dist. Stark No. CA-7350, 1988 WL 17155, *3 (Feb. 8, 1988); *In re T.C.*, 6th Dist. Lucas No. L-15-1106, 2015-Ohio-3665, ¶ 21; *In re Guardianship of Myers*, 7th Dist. Mahoning Nos. 02-CA-6 and 02-CA-42, 2003-Ohio-5308, ¶ 21; *In re A.P.D.*, 8th Dist. Cuyahoga No. 100504, 2014-Ohio-1632, ¶ 13; *In re Z.H.*, 2013-Ohio-3904, 995 N.E.2d 295, ¶ 16 (9th Dist.); *Myers v. Wade*, 10th Dist. Franklin No. 16AP-667, 2017-Ohio-8833, ¶ 22; *In re A.R.*, 11th Dist. Ashtabula No. 2018-A-0078, 2019-Ohio-2166, ¶ 29; *In re Guardianship of Bernie*, 12th Dist. Butler No. CA2018-01-005, 2019-Ohio-334, ¶ 27-28.

{¶ 45} There is a constitutional separation-of-powers problem here, but the problem is one of this court's making. Our general superintendence power over "all courts in the state," Article IV, Section 5(A)(1), does not include the authority to promulgate rules that contravene a substantive right of the people.

### Application of the above to this case

{¶ 46} A court's "powers must be delimited with care, for there is danger of overreaching when one branch of Government, without the benefit of cooperation or correction from the others, undertakes to define its own authority." *Degen v. United States*, 517 U.S. 820, 823, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996),

citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). But this is where we find ourselves today.

{¶ 47} This court has egregiously overreached, exceeding the limits of its enumerated constitutional power by using its own rules to exempt itself and lower courts from the Public Records Act. As promulgated, the superintendence rules that regulate judicial records abridge a substantive right of the people. The Public Records Act, not the Rules of Superintendence, should control the release of judicial records in this case, as it did in court-records cases decided prior to the adoption of Sup.R. 44 through 47, *see, e.g.*, *WBNS TV*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, and *Highlander*, 103 Ohio St.3d 370, 2004-Ohio-4952, 816 N.E.2d 213.

{¶ 48} But the Enquirer did not ask for a determination pursuant to the Public Records Act. Its failure to do so is understandable: if recent precedent can be taken as a guide, a majority of this court would have dismissed its claim. *See Parisi*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, at ¶ 20. Nonetheless, we are constrained to consider only the claims presented. Therefore, I concur in the court's judgment granting writs of mandamus and prohibition ordering Judge Forsthoefel to vacate his order sealing the documents, barring him from enforcing the sealing order, and ordering him to conduct a proper review of the documents. "[O]pen access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor." *Kish*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at ¶ 17.

DEWINE, J., concurs in the foregoing opinion.

_____

Graydon Head & Ritchey, L.L.P., Darren W. Ford, and Kellie A. Kulka, for relator.

Spengler Nathanson, P.L.L., Teresa L. Grigsby, and Jennifer A. McHugh, for respondent.

_____