[Cite as *State ex rel. Suburban Driving School, L.L.C. v. Ohio Bur. of Workers' Comp.*, 2025-Ohio-1841.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Suburban Driving School, LLC, | : | |
| | : | |
| Relator, | : | |
| v. | : | No. 23AP-241 |
| State of Ohio Bureau of Workers' Compensation et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on May 22, 2025

**On brief:** *Arnold Gruber & Haren, LTD*, and *Sidney N. Freeman*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *John Smart*, for respondent Administrator, Ohio Bureau of Workers' Compensation.

IN MANDAMUS

MENTEL, J.

{¶ 1} Relator, Suburban Driving School, LLC ("Suburban Driving"), brought this original action in mandamus seeking to vacate the final order of the Bureau of Workers' Compensation ("BWC") finding that it was "essentially the same employer" as Top Driver Ohio, LLC ("Top Driver Ohio") under Adm.Code 4123-17-13(A), resulting in the agency combining the entities' policies. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. After reviewing the stipulated record and the arguments of the parties, the magistrate has concluded that there was some evidence in the record to support BWC's determination, and therefore recommends that we deny the request for a writ of mandamus.

{¶ 2} Suburban Driving objects to the magistrate's decision as follows:

> The Magistrate erred, to the prejudice of Relator, by finding and concluding that Suburban Driving School "wholly succeeded" Top Driver Ohio, LLC . . . either for the purpose of assuming Top Driver's outstanding obligation to [BWC], or for basing Suburban Driving School's experience rating.

(Emphasis deleted.) (May 9, 2024 Obj. at 1-2.)

{¶ 3} As Suburban Driving points out, R.C. 4123.32(B) authorizes BWC to promulgate rules that the agency "considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another," and as well "may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due" to the workers' compensation fund.

{¶ 4} According to Suburban Driving, the magistrate erred "by finding and concluding" that Adm.Code 4123-17-02(C)(2) applied because the "established facts in this case" show that Suburban Driving does not meet the requirements stated in the regulation to qualify as a successor-in-interest to Top Driver Ohio. (Obj. at 1-3.)

{¶ 5} However, neither the magistrate nor BWC applied Adm.Code 4123-17-02(C)(2) in this case. As the magistrate states:

> Here, despite the fact that the adjudicating committee and administrator's designee clearly provided Ohio Adm.Code 4123-17-13 as the basis for combining Suburban Driving and Top Driver Ohio's policies, Suburban Driver does not address, or even cite, Ohio Adm.Code 4123-17-13 in its brief. Instead, Suburban Driving appears to argue that the administrator's designee wrongly applied the successor-in-interest rule found in Ohio Adm.Code 4123-17-02. Suburban Driving argues that the analysis of this matter is controlled by the Supreme Court of Ohio's decision in *State ex rel. K&D Group, Inc. v. Buehrer*, 135 Ohio St.3d 257, 2013-Ohio-734, ¶ 9. *K&D Group*, however, includes no discussion of Ohio Adm.Code 4123-17-13, but instead is entirely based on its analysis of Ohio Adm.Code 4123-17-02.

(Appended Mag.'s Decision at ¶ 41.)

{¶ 6} In its objection, Suburban Driving repeats the error described by the magistrate. Under the version of Adm.Code 4123-17-13(D) in effect at the time of its order, BWC could "transfer the prior risk coverage pursuant to 4123-17-02" if "the employer [was] essentially the same employer, regardless of entity type" because that equivalence obviated the need to apply the successor-of-interest test under Adm.Code 4123-17-02(C)(2). As the magistrate notes, "Suburban Driving itself argues that there was no transfer of a business." (Appended Mag.'s Decision at ¶ 42.) Thus, the successor-in-interest test under Adm.Code 4123-17.02(C)(2) does not apply. Once BWC found evidence to support the determination that Suburban Driving and Top Driver Ohio were "essentially the same employer" under former Adm.Code 4123-17-13(D), that regulation allowed BWC to "transfer the prior risk coverage pursuant to 4123-17-02" and required Suburban Driving to "assume any outstanding obligations under prior risk coverage" *as if* Suburban Driving had "wholly succeed[ed]" Top Driver Ohio under Adm.Code 4123-17-02(C)(1). Instead of grappling with the "essentially the same employer" test under Adm.Code 4123-17-13 that BWC actually applied, Suburban Driving argued with a straw man before the magistrate, and continues to do so now. The sole objection is overruled.

{¶ 7} "To be entitled to the extraordinary remedy of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty on the part of the bureau to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 2016-Ohio-5011, ¶ 18, citing *State ex rel. GMC v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. We agree with the magistrate that Suburban Driving has shown no right to the relief requested, and that some evidence supported the order that prompted its request for a writ. Accordingly, we adopt the decision of the magistrate in full and deny the writ of mandamus.

*Writ of mandamus denied.*

BEATTY BLUNT and BOGGS, JJ., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Suburban Driving School, LLC,   :

        Relator,                                                   :

v.                                                                                                 No.  23AP-241
                                                                          :

Bureau of Workers' Compensation et al.,                    (REGULAR CALENDAR)
                                                                          :

        Respondents.                                          :

                                                                          :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 25, 2024

---

*Arnold Gruber & Haren, LTD,* and *Sidney N. Freeman*, for relator.

*Dave Yost*, Attorney General, and *John Smart,* for respondent Administrator, Ohio Bureau of Workers' Compensation.

---

IN MANDAMUS

{¶ 8}   Relator Suburban Driving School, LLC ("Suburban Driving"), seeks a writ of mandamus ordering respondents, the Bureau of Workers' Compensation ("BWC") and John Logue, administrator of the BWC, to vacate the final order of the BWC administrator's designee finding that Suburban Driving was essentially the same employer as Top Driver Ohio, LLC ("Top Driver Ohio") and affirming the transfer of experience, rights, and obligations from Top Driver Ohio to Suburban Driving. Suburban Driving also requests an order granting its protest letter, in which Suburban Driving argued that the two entities are unrelated.

**I. Findings of Fact**

{¶ 9}   1. In May 2009, initial articles of incorporation were filed with the Ohio Secretary of State for Revolution Sales & Marketing, Inc. ("Revolution Sales"). Thomas E. Deighan (hereinafter "Deighan"), who was listed as the authorized representative, authenticated and signed the articles.

{¶ 10}   2. A U-3 application for workers' compensation coverage dated July 21, 2009 was filed with the BWC on behalf of Revolution Sales. The application listed "TopDriver Ohio" as the trade name or doing business as name. (Stip. at 52.) Deighan and Timothy E. Deighan were listed as owners or officers of Revolution Sales.[1] Deighan's title was listed as "CEO," and it was indicated that he had a 0 percent ownership interest in the Revolution Sales. (Stip. at 53.) The service or product of Revolution Sales was described as "driver education." (Stip. at 54.) Revolution Sales listed its operations as "drivers training" and estimated the number of employees engaged in such operations. (Stip. at 55.)

{¶ 11}   3. In early 2012, articles of organization for a domestic limited liability company were filed with the Ohio Secretary of State for Top Driver Ohio. The articles were authenticated and signed by Deighan. Revolution Sales was also printed above Deighan's name.

{¶ 12}   4. A U-3 application, which was signed by Deighan and dated August 21, 2013, was submitted on behalf of Top Driver Ohio to the BWC. In the section which required the applicant to "[i]nclude the names of all owners and officers," only Deighan was listed. (Stip. at 89.) Deighan's title was listed as CEO and it was indicated that he had a 51 percent total ownership interest in Top Driver Ohio. The service or product of Top Driver Ohio was described as "driving school education." (Stip. at 90.) "No," was marked in response to the question, "Have there been other Ohio workers' compensation policies associated with this operation or any other affiliated operation?" (Stip. at 62.) There was no marked response to the question, "Do any of the principals have workers' compensation coverage in this or any other operation; or have they had workers' compensation coverage in any operation in the past?" (Stip. at 62.)

{¶ 13}   5. In a letter to the BWC dated March 15, 2014, it was stated that Revolution Sales went out of business in 2012.

---

[1] No information regarding the relation, if any, between Deighan and Timothy E. Deighan appears in the record.

{¶ 14} 6. In a letter dated December 17, 2015, the BWC informed Top Driver Ohio that it had extended coverage for Revolution Sales to Top Driver Ohio.

{¶ 15} 7. The BWC Employer Compliance Department released a report of investigation of Revolution Sales on December 21, 2015. In the report, the BWC compliance officer noted that a claim occurred under the policy of Revolution Sales when an employee was injured on August 14, 2013. The policy of Top Driver Ohio was initiated on August 21, 2013. The compliance officer found paystubs in the claim for the Top Driver Ohio policy, further stating: "There are notes from the employer [who] stated several times he was not sure that the claim was filed under the right policy number. This claim should have been filed under [the Top Driver Ohio policy]." (Stip. at 70.) The compliance officer summarized findings regarding the relationship between Revolution Sales and Top Driver Ohio as follows:

> The owner of the company told a CSS early in the claim process that he thought this claim should be filed under [Top Driver Ohio's policy] but this account was created after the [date of injury]. The officer does note that the employer marked on the application that the first hire date as [January 1, 2013]. But these companies have the same name and same principles. At this time the officer requests that [Revolution Sales's account] be combined into [Top Driver Ohio's account]. The owner has emailed multiple requests to the BWC to cancel [the Revolution Sales account] stating that they "went out of business in 2012" but there was a claim filed prior to the [Top Driver Ohio] U3 application request for coverage was filed. Also the injured worker states that they have he has worked for the company for many years prior to the date of injury with the paystubs as evidence, nothing mentioned about them being out of business.

(Sic passim.) (Stip. at 70.)

{¶ 16} 8. An invoice dated March 18, 2016 from the BWC to Top Driver Ohio listed an outstanding balance for the Revolution Sales policy in the amount of $83,756.04.

{¶ 17} 9. A U-117 notification of policy update form, which was signed by Deighan and dated February 12, 2018, was submitted to the BWC on the same date. In the form, Deighan indicated that Top Driver Ohio went out of business effective December 31, 2017 and requested a cancellation of the policy.

{¶ 18} 10. A U-3 application, which was signed by Deighan and dated April 30, 2018, was filed with the BWC on behalf of Suburban Driving. Suburban Driving's primary physical location and mailing address were at a location in Tallmadge, Ohio. The first date that employees earned wages in Ohio was listed as January 1, 2018. In the section which required the applicant to list "the names of all owners and officers," only Deighan's name was listed. (Stip. at 89.) Deighan's title was listed as "Chief Financial Officer" and it was indicated that he had a 0 percent ownership interest in Suburban Driving. (Stip. at 89.) The service or product of Suburban Driving was described as "driving school education." (Stip. at 90.) "No," was marked in response to the question, "Have there been other Ohio workers' compensation policies associated with this operation or any other affiliated operation?" (Stip. at 91.) "No," was marked in response to the question, "Do any of the principals have workers' compensation coverage in this or any other operation; or have they had workers' compensation coverage in any operation in the past?" (Stip. at 91.)

{¶ 19} 11. In a letter dated May 10, 2018, the BWC provided Suburban Driving with notice of an incomplete application, stating that Suburban Driving's application for coverage would be denied if the required information was not provided.

{¶ 20} 12. Deighan responded to the May 10, 2018 letter with additional information. Deighan listed his title as "CFO" and indicated that he had a 100 percent ownership interest in Suburban Driving. (Stip. at 94.)

{¶ 21} 13. Deighan completed a U-117 form dated May 24, 2018 in which he indicated he had a 90 percent ownership interest in Suburban Driving. Deighan also updated the primary physical location and mailing address of Suburban Driving.

{¶ 22} 14. In a letter dated October 10, 2018, the BWC informed Suburban Driving that it was the successor employer for Top Driver Ohio.

{¶ 23} 15. An agent of the BWC special investigations department contacted Deighan and Suburban Driving's attorney in October 2018 regarding a meeting with Deighan in November 2018. The agent stated that the BWC had two active policies related to two driving schools owned by Deighan, namely Suburban Driving and another school identified as "Schwartz Driving School Ohio" ("Schwartz Driving"). (Stip. at 6.) The agent noted that the policy for Schwartz Driving had lapsed as of July 1, 2017 and stated that an entity identified as "Schwartz DT Exclusive LLC" ("Schwartz DT") was combined into

Schwartz Driving. (Stip. at 6.) The agent further stated that "BWC also had several other policies that Tom [Deighan] is owner or partial owner of that have (significant) balances." (Stip. at 6.) Specifically, Revolution Sales had a balance of $83,756.04, Top Driver Ohio had a balance of $130,021.81, Suburban Driving had a balance of $2,444.83, Schwartz DT had a balance of $2,139.65, and Schwartz Driving had a balance of $981.00. The total balance for the listed policies was nearly a quarter of a million dollars.

{¶ 24} 16. In a November 20, 2018 letter to the BWC, Suburban Driving's representative listed a number of arguments contesting the combination of Top Driver Ohio and Suburban Driving.

{¶ 25} 17. Following a complaint from Suburban Driving seeking to reverse the combination, the BWC denied Suburban Driving's request in a March 21, 2019 letter. In the letter, the following reasoning was provided for the determination:

> We have reviewed your complaint requesting reversal of a combination between multiple entities of similar operations. Regrettably, we must deny your request. Our policy underwriting unit combined your existing policies after determining that the employers are essentially the same employer.
>
> [Ohio Adm.Code] 4123-17-13(D) requires us to evaluate an employer's application for new coverage to determine if that employer is essentially the same employer for which coverage had previously been provided, regardless of entity type. The policy underwriting unit determined the employers are the same. Thus, we combined the policies to transfer the prior coverage pursuant to [Ohio Adm.Code] 4123-17-02.

(Stip. at 102.)

{¶ 26} 18. Suburban Driving filed a Legal-15 application for adjudication hearing form in which it argued that Top Driver Ohio lost its permit to operate in Ohio.[2] Suburban Driving stated that there was no sale of assets, transfer of assets, transfer of employees or clientele. In support of its application, Suburban Driving attached a copy of a termination, settlement agreement, and general release ("termination agreement") between Top Driver Acquisition, LLC ("TDA") and four Ohio businesses: Top Driver Ohio, Bicks Driving

---

[2] The form bears two signatures with different dates: November 8, 2019 and November 20, 2019. It is unclear from the record on what date this form was filed with the BWC.

School of Ohio, Inc., Suburban Driving, and Schwartz Driving School, LLC.[3] The four Ohio businesses were jointly referred to in the termination agreement as "TDOH." (Stip. at 9.) The termination agreement provided the TDOH parties with, among other rights and obligations, a license to certain web services and software until November 30, 2017. Additional rights and obligations provided under the termination included the following:

> Until midnight on October 31, 2017, as long as TDOH is in full compliance with all of its obligations under this Agreement, TDOH will have a non-exclusive, limited, non-transferrable, non-assignable, non-sublicensable license to use the Marks, as defined in Section 1.8 of the License Agreement, solely in connection with providing its driver education services in the normal course. As of midnight on October 31, 2017, such license will terminate and TDOH and all instructors, officers, employees and other representatives of TDOH will cease all use of all Marks, including without limitation, the name "Top Driver" and all other references to TDA, including, without limitation, use of the same in connection with classroom materials, e-mail addresses, social media, car signage, lease signage and advertising. As of midnight on October 31, 2017, such license will terminate and TDOH and all instructors and representatives of TDOH will cease all use.

(Stip. at 11.) The termination agreement specified that "TDOH will begin immediate transition to providing its own services and using its own marks, training facilities, websites, software, and other resources, and must complete that transition not later than November 30, 2017." (Stip. at 10.) The termination agreement specified that the TDOH parties were required to make certain payments by December 31, 2017, and that there was a "personal guarantee" on such payments by Deighan alone. (Stip. at 11.)

{¶ 27} 19. The Adjudicating Committee of the BWC ("adjudicating committee") held a hearing on Suburban Driving's protest on June 4, 2019. Deighan and Suburban Driving's attorney were present at the hearing in addition to a representative of the BWC. In an order mailed July 2, 2019, the adjudicating committee summarized the positions of the BWC and Suburban Driving, set forth findings of fact, and made conclusions of law. The adjudicating committee noted Suburban Driving's arguments that there was no transfer of the business, business assets, the employees, or the clientele. However, the adjudicating

---

[3] It is unclear from the record whether "Schwartz Driving School, LLC," is the same organization as Schwartz Driving, which was referred to in the communication sent by the BWC special investigations agent.

committee found that "regardless of whether or not the Committee agrees with the employer's position, these factors are not dispositive with respect to BWC's discretion to applying coverage initiation in accordance with Ohio Adm.Code 4123-17-13(D)." (Stip. at 118-19.) The adjudicating committee denied Suburban Driving's protest, finding that the BWC correctly combined or transferred Top Driver Ohio's policy with or to Suburban Driving pursuant to Ohio Adm.Code 4123-17-13(D). Suburban Driving appealed the adjudicating committee's order to the BWC administrator's designee.

{¶ 28} 20. On March 31, 2022, a hearing was held before the administrator's designee on appeal from the order of the adjudicating committee. Deighan and Suburban Driving's attorney were present on behalf of Suburban Driving in addition to representatives of the BWC. In an order mailed May 26, 2022, the administrator's designee made findings of fact and conclusions of law. With regard to Ohio Adm.Code 4123-17-13(D), the administrator's designee stated:

> BWC applies Ohio Adm.Code 4123-17-13(D) where a single employer or individual owns multiple entities, corporations, or Federal Employer Identification Numbers ("FEINs") for various portions of its business that co-exist. The rule may be applied even if the business does not actually succeed another. Rather, the rule is meant to address situations where the employers are essentially the same for the purposes of Ohio workers' compensation coverage and it is applied to successive businesses even where identical ownership is lacking. An employer may operate its business separately for any other legal purpose even if BWC instructs the employer to report payroll under a combined policy number.

(Stip. at 49.)

{¶ 29} The administrator's designee adopted the findings of fact of the adjudicating committee as modified and made additional findings of fact. Among the findings of fact, the administrator's designee found that on August 14, 2013, an employee of Top Driver Ohio filed a workers' compensation claim in 2013. W-2 wage and tax statement forms submitted to support the calculation of wages in the workers' compensation claim reflected wages from Revolution Sales in 2012, while the 2013 W-2 for the same employee was from Top Driver Ohio. One week later, on August 21, 2013, Top Driver Ohio submitted its application for workers' compensation coverage. In response to a note from Revolution Sales indicating that Revolution Sales went out of business in 2012, a BWC employee noted

that Revolution Sales had claims filed in 2013, but had been lapsed since 2008. BWC combined the policies of Revolution Sales and Top Driver Ohio, finding that Deighan incorporated both businesses, was the majority owner in Top Driver Ohio, and was involved in Revolution Sales as well. Additionally, Revolution Sales and Top Driver Ohio were in the same business pursuit and claims were being filed for Revolution Sales under Top Driver Ohio's policy.

{¶ 30} The administrator's designee made the following factual findings related to the relationship between Top Driver Ohio, Schwartz Driving, Revolution Sales, and Suburban Driving:

> On or about November 1, 2017, Top Driver Acquisition, LLC, an Illinois based organization, terminated its agreement with Revolution under which it allowed it to use the Top Driver name and trademarks, as well as web and customer support services. Thereafter it entered into a License Agreement with Top Driver Ohio, LLC, Bicks Driving School of Ohio, Inc., Suburban Driving School of Ohio, LLC and Schwartz Driving School, LLC for the use of "Top Driver marks and some administrative and web support." As of December 31, 2017, the relationship with the above entities was terminated completely. (Statement from CEO of Top Driver Acquisition dated September 18, 2018. See also Termination and Release submitted with employer protest on April 17, 2019.)

(Stip. at 46-47.) The administrator's designee found that after Deighan submitted the February 12, 2018 U-117 form indicating Top Driver Ohio went out of business effective December 31, 2017, "[o]n February 23, 2018, a Certificate of Dissolution for Top Driver Ohio LLC was submitted to the [Secretary of State]." (Stip. at 47.) The certificate was signed by Deighan as the authorized representative for Top Driver Ohio. Furthermore, the Secretary of State's receipt reflected it was mailed to Deighan's attention at an address in Tallmadge, Ohio. The administrator's designee found that in Suburban Driving's initial coverage application, the business address for Suburban Driving was "the same address to which the Ohio [Secretary of State] sent the receipt dissolving Top Driver Ohio." (Stip. at 47.)

{¶ 31} In applying the coverage initiation rule, the administrator's designee made the following findings:

> Top Driver Ohio and Suburban [Driving] shared the same business pursuit, that is, to provide driver instruction to

students, and there were two common laborers: Thomas E. Deighan and another employee, which the employer confirmed at the hearing before the Administrator's Designee. Again, Thomas E. Deighan was a 51% owner of Top Driver Ohio, and Deighan was listed in some documentation he submitted to BWC as the CEO or the CEO. He is also a majority owner of Suburban [Driving] and acts as its CFO. Moreover, as the Adjudicating Committee noted, Deighan incorporated and operated several drivers' education businesses within the state of Ohio over the years. BWC previously combined Revolution's policy with Top Driver Ohio's policy. Deighan played a material role in establishing Top Driver Ohio and Suburban, in securing workers' compensation coverage for both, and in operating each business day-to-day, whether as the CEO or the CFO. Further, both businesses were operated out of Tallmadge, Ohio, and [Secretary of State] correspondence regarding Top Driver Ohio went to the same Tallmadge address Deighan used to establish workers' compensation coverage for Suburban [Driving].

(Stip. at 50.) Based on the testimony and evidence presented, the administrator's designee affirmed the findings, decision, and rationale set forth in the adjudicating committee's order and denied Suburban Driving's protest.

{¶ 32} 21. On April 18, 2023, Suburban Driving commenced this mandamus action by filing its complaint.

## II. Discussion and Conclusions of Law

{¶ 33} Suburban Driving seeks a writ of mandamus ordering BWC to vacate the final order of the administrator's designee.

## A. Requirements for Mandamus

{¶ 34} In order to establish entitlement to the extraordinary remedy of mandamus, a relator must prove a clear legal right to the requested relief, a clear legal duty on the part of the respondents to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18. As relevant here, Suburban Driving must show the challenged order was contrary to law or not supported by some evidence in the record. *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997); *State ex rel. Aero Pallets, Inc. v. State Bur. of Workers' Comp.*, 10th Dist. No. 19AP-829, 2023-Ohio-

1384, ¶ 33. *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 38 (stating that the right to exercise discretion does not imply the right to apply the law incorrectly).

## B. Applicable Law

{¶ 35} R.C. 4123.32, which grants the BWC authority to adopt rules in furtherance of its fiduciary obligation to the state insurance fund, provides as follows:

> The administrator of workers' compensation, with the advice and consent of the bureau of workers' compensation board of directors, shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:
>
> * * *
>
> (B) Such special rules as the administrator considers necessary to safeguard the fund and that are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, and the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter.
>
> * * *
>
> (F) A rule providing that each employer, on the occasion of instituting coverage under this chapter, shall submit an application fee and an application for coverage that completely provides all of the information required for the administrator to establish coverage for that employer, and that the employer's failure to pay the application fee or to provide all of the information requested on the application may be grounds for the administrator to deny coverage for that employer.

R.C. 4123.32.[4] As required by R.C. 4123.32, the BWC promulgated a rule regarding an employer's application for workers' compensation coverage. Ohio Adm.Code 4123-17-13(A) describes the requirements for an application for workers' compensation coverage as follows:

---

[4] R.C. 4123.32 was amended effective March 24, 2021 by 2020 Sub.S.B. 201, after Suburban Driving filed its application for coverage. The amendments to R.C. 4123.32 are not material to the present action.

(A) To institute workers' compensation coverage under this rule, the employer shall submit an application for coverage that completely provides all the information required for the bureau of workers' compensation to establish coverage for the employer.

(1) The application for coverage shall be submitted on a form designated by the bureau, and shall include, at a minimum, the following information:

(a) The legal name and business entity type (corporation, L.L.C., sole proprietorship, partnership, etc.);

(b) Address of the employer;

(c) The federal tax identification number or social security number of the employer;

(d) Information related to the description of the employer's operations, including:

(i) A description of the work done or industry conducted by the employer, and

(ii) The estimated average number of employees in each kind of work; and

(iii) The estimated wages of employees in each kind of work over the next twelve months.

(e) Information related to whether the applicant for coverage has purchased an existing business or has another associated policy;

(f) Name of the owners or corporate officers, and, where applicable for elective coverage, the name and necessary identifying information of the sole proprietor, partners, or ministers;

(g) Signature of the person completing the application for coverage; and

(h) A non-refundable application fee equal to the minimum administrative annual charge set forth in rule 4123-17-26 of the Administrative Code.

(2) If the bureau receives an application for coverage that does not contain all of the information required by paragraph (A)(1) of this rule, the bureau will attempt to contact the employer to obtain the required information. If the applicant does not provide the required information, the bureau shall deny the employer's application for coverage based upon the employer's failure to provide all the information required by paragraph (A)(1) of this rule.

Ohio Adm.Code 4123-17-13(A).[5] Additionally, Ohio Adm.Code 4123-17-13(D), which is sometimes referred to as the "coverage initiation rule" or the "policy initiation rule," contains the following provisions related to prior policies:

> If the bureau determines, after reviewing the information submitted with the application provided for in paragraph (A) of this rule, that the employer is essentially the same employer regardless of entity type for which risk coverage previously had been provided, the bureau may transfer the prior risk coverage to the employer pursuant to rule 4123-17-02 of the Administrative Code and the employer shall assume any outstanding obligations under the prior risk coverage. The bureau may reactivate a previously cancelled policy in order to complete this transfer.

Ohio Adm.Code 4123-17-13(D).

{¶ 36} Under the authority of R.C. 4123.32(B), the BWC promulgated a rule governing the determination of the successor in interest to a business and the effect of such determination with regard to the business's experience, rights, and obligations. Ohio Adm.Code 4123-17-02(B), which pertains to the experience of a successor, provides in pertinent part as follows:

> (1) Where one legal entity, not having coverage in the most recent experience period, wholly succeeds another legal entity in the operation of a business, the successor's rate shall be based on the predecessor's experience within the most recent experience period.
>
> (2) Where a legal entity having an established coverage or having had experience in the most recent experience period wholly succeeds one or more legal entities having established coverage or having had experience in the most recent experience period and at least one of the entities involved has a merit rating experience, the experience of all the involved entities shall be combined to establish the rate of the successor.
>
> (3) Where a legal entity succeeds in the operation of a portion of a business of one or more legal entities having an established coverage or having had experience in the most recent experience period, the successor's rate shall be based

---

[5] Ohio Adm.Code 4123-17-13 was amended effective July 1, 2023, after Suburban Driving filed its application for coverage and the final order of the administrator's designee was issued. All references to Ohio Adm.Code 4123-17-13 are to the version in effect at the time of the filing of the application and the issuance of the final order.

on the predecessor's experience within the most recent experience period, pertaining to the portion of the business acquired by the successor.

* * *

(6) In addition to paragraphs (B)(1) to (B)(5) of this rule, and regardless of whether the predecessor's transfer to the successor was voluntary or through an intermediary bank or receivership, the bureau shall transfer the predecessor's experience under the workers' compensation law to the successor if any of the following criteria are met:

(a) The successor expressly or impliedly agrees to assume such obligations;

(b) The succession transaction amounts to a de facto consolidation or merger;

(c) The successor is merely a continuation of the predecessor; or

(d) The succession transaction is entered into for the purpose of escaping obligations under the workers' compensation law.

(7) If all of the following conditions are met, the bureau will not transfer the experience from the predecessor to the successor:

(a) There is a material change in ownership;

(b) There is a change in governing classification; and

(c) There is a change in process and hazard.

(8) In addition to paragraph (B)(7) of this rule, the bureau will not transfer the experience from the predecessor to the successor if both of the following are met:

(a) The time between the predecessor ceasing all operations and the effective date of purchase is greater than six months; and

(b) There is no family relationship or other connection between the predecessor and the successor.

Ohio Adm.Code 4123-17-02(B).[6] Ohio Adm.Code 4123-17-02(C), which relates to the rights and obligations of a successor, provides in pertinent part as follows:

---

[6] As with Ohio Adm.Code 4123-17-13, Ohio Adm.Code 4123-17-02 was amended effective July 1, 2023, after Suburban Driving filed its application for coverage and the final order of the administrator's designee was issued. All references to Ohio Adm.Code 4123-17-02 are to the version in effect at the time of the filing of the application and the issuance of the final order.

(1) Where one employer wholly succeeds another in the operation of a business, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law to the successor.

(2) In addition to paragraph (C)(1) of this rule and regardless of whether the predecessor's transfer to the successor was voluntary or through an intermediary bank or receivership, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law to the successor if any of the following criteria are met:

(a) The successor expressly or impliedly agrees to assume such obligations;

(b) The succession transaction amounts to a de facto consolidation or merger;

(c) The successor is merely a continuation of the predecessor; or

(d) The succession transaction is entered into for the purpose of escaping obligations under the workers' compensation law.

(3) If all the following conditions are met, the bureau will not transfer the predecessor's rights and obligations to the successor:

(a) There is a material change in ownership;

(b) There is a change in governing classification; and

(c) There is a change in process and hazard.

(4) In addition to paragraph (C)(3) of this rule, the bureau will not transfer the predecessor's rights and obligations to the successor if both of the following are met:

(a) The time between the predecessor ceasing all operations and the effective date of purchase is greater than six months; and

(b) There is no family relationship or other connection between the predecessor and the successor.

Ohio Adm.Code 4123-17-02(C).

## C. Analysis

{¶ 37} The administrator's designee found it was not error for the BWC to apply the coverage initiation rule in Ohio Adm.Code 4123-17-13 to combine the policies of Suburban Driving and Top Driver Ohio consistent with the BWC's obligation to safeguard the state insurance fund. Suburban Driving argues respondents erred by finding

Suburban Driving to be a successor-in-interest to Top Driver Ohio under Ohio Adm.Code 4123-17-02. Respondent Logue argues that the order of the administrator's designee was supported by some evidence in the record.

{¶ 38} This court has previously addressed the application of Ohio Adm.Code 4123-17-13 in considering arguments similar to those made by Suburban Driving in this matter. *State ex rel. HGC Ents. v. Buehrer*, 10th Dist. No. 12AP-482, 2013-Ohio-2108. In *HGC*, an employer, HGC Enterprises, sought to initiate coverage under a new policy. The BWC applied the coverage initiation rule in Ohio Adm.Code 4123-17-13 to find that HGC Enterprises was essentially the same employer as HYWY Foods, another employer with a previously existing policy. Therefore, the BWC denied HGC Enterprises's application for a new policy and updated HYWY Foods's existing policy to include HGC Enterprises, transferring the prior risk coverage to HGC Enterprises and providing that HGC Enterprises assumed any outstanding obligations under the prior risk coverage. HGC Enterprises challenged the final order of the administrator's designee affirming the decision to require HGC Enterprises to use HYWY Foods's existing policy.

{¶ 39} Before this court, HGC Enterprises argued that R.C. 4123.32(C) and Ohio Adm.Code 4123-17-02 controlled the analysis for determining whether a successor-in-interest could be required to assume a prior employer's experience rating. The court, agreeing with the findings of the appointed magistrate, found that there was no evidence that HGC Enterprises purchased HYWY Foods and, therefore, there was no cause to apply Ohio Adm.Code 4123-17-02. Instead, the court found that "when there are circumstances to suggest that something other than a partial or whole transfer of a business has taken place, the 'essentially-the-same-business' analysis in Ohio Adm.Code 4123-17-13[] applies." *Id.* at ¶ 8.[7] The court stated that "even lacking a transfer or purchase of a business, Ohio Adm.Code 4123-17-13[] permits the BWC to find that the two entities are 'essentially the same employer.' " *Id.* The purpose of the "essentially the same employer" rule under Ohio Adm.Code 4123-17-13 was "so that the subsequent entity cannot unfairly

---

[7] Ohio Adm.Code 4123-17-13 was substantially amended effective July 1, 2015. In part, this amendment created new sections and moved existing sections. As relevant here, the "essentially the same employer" rule and related provisions of Ohio Adm.Code 4123-17-13 was located in subsection (C) at the time of this court's decision in *HGC*. Former subsection (C) was moved to its current location in subsection (D) by the 2015 amendments. For purposes of clarity, this decision removes specific references to subsection (C) in quoted portions of *HGC*.

escape liability for any outstanding obligations incurred by the prior entity by artful maneuvers that technically and legally sever the succession between the two entities." *Id.*

**{¶ 40}** Next, the court found that the circumstances of the case, as found by the magistrate, supported finding that both were essentially the same employer. The magistrate found that HYWY Foods was owned and operated by the son of the owner of HGC Enterprises. HYWY Foods formerly operated a franchise at the same location that HGC Enterprises operated new franchise. The two franchises shared the same telephone number and some of the equipment used by the former franchise was purchased by HGC Enterprises and used in the new franchise. Some of the former employees of the former franchise were employed at the new franchise. Based on these facts alone, the court agreed with the magistrate that the BWC did not abuse its discretion by finding that HGC Enterprises is essentially the same employer as HYWY Foods. Finally, the court found that the phrase "essentially the same employer" in Ohio Adm.Code 4123-17-13 was not unconstitutionally vague.

**{¶ 41}** Here, despite the fact that the adjudicating committee and administrator's designee clearly provided Ohio Adm.Code 4123-17-13 as the basis for combining Suburban Driving and Top Driver Ohio's policies, Suburban Driving does not address, or even cite, Ohio Adm.Code 4123-17-13 in its brief. Instead, Suburban Driving appears to argue that the administrator's designee wrongly applied the successor-in-interest rule found in Ohio Adm.Code 4123-17-02. Suburban Driving argues that the analysis of this matter is controlled by the Supreme Court of Ohio's decision in *State ex rel. K&D Group, Inc. v. Buehrer*, 135 Ohio St.3d 257, 2013-Ohio-734, ¶ 9. *K&D Group*, however, includes no discussion of Ohio Adm.Code 4123-17-13, but instead is entirely based on its analysis of Ohio Adm.Code 4123-17-02. Thus, *K&D Group* is not dispositive of the question presented in this action.

**{¶ 42}** Insofar as Suburban Driving argues that the combination of policies should be understood under Ohio Adm.Code 4123-17-02, such argument is without merit. Suburban Driving itself argues that there was no transfer of a business. As *HGC* makes clear, the coverage initiation rule in Ohio Adm.Code 4123-17-13, not the successor-in-interest rule in Ohio Adm.Code 4123-17-02, applies where circumstances indicate something other than a partial or whole transfer of a business has taken place. *HGC* at

¶ 8. In accordance with *HGC*, Suburban Driving has failed to demonstrate that the BWC erred in applying Ohio Adm.Code 4123-17-13 to the policies at issue.

**{¶ 43}** Next, it is necessary to determine whether some evidence supports the determination under Ohio Adm.Code 4123-17-13 that Suburban Driving and Top Driver Ohio are essentially the same employer. The detailed orders of both the adjudicating committee and administrator's designee contain ample summaries of the factors considered. Notably, Deighan serves as a common element of the businesses in several respects. Top Driver Ohio and Suburban Driving shared common or similar management as shown through the listing of Deighan as CEO or CFO of Top Driver Ohio and CFO of Suburban Driving. As reflected in the documents filed with the Ohio Secretary of State and as detailed in both orders, Deighan was involved in the organization of both entities and the dissolution of Top Driver Ohio. Deighan was listed at one time as having a 51 percent ownership interest in Top Driver Ohio and was variously listed as having a 90 or 100 percent ownership interest in Suburban Driving.

**{¶ 44}** In addition to the common element of Deighan's high-level involvement, Top Driver Ohio and Suburban Driving were involved in the same business pursuit, i.e., providing driving instruction. The administrator's designee found that at least one other employee in addition to Deighan was employed by both Top Driver Ohio and Suburban Driving. Suburban Driving used vehicles that were titled to Top Driver Ohio. The same address in Tallmadge, Ohio was used at some point for both Top Driver Ohio and Suburban Driving. These facts alone constitute some evidence to support that Top Driver Ohio and Suburban Driving are essentially the same employer for purposes of Ohio Adm.Code 4123-17-13, though more supporting evidence is also available in the record, as described in part below in response to Suburban Driving's arguments.

**{¶ 45}** In its brief and reply brief, Suburban Driving makes a number of factual statements that it contends "stand unrefuted." (Suburban Driving's Brief at 2; Suburban Driving's Amended Reply Brief at 4.) For example, Suburban Driving addresses the adjudicating committee's statement regarding vehicles titled in Top Driver Ohio's name that were found parked at Suburban Driving's location.[8] Suburban Driving states in its

---

[8] As reflected in its order, the adjudicating committee noted the BWC representative's statement that "Top Driver Ohio has six vehicles in its name, three of which were parked at Suburban [Driving]." (Stip. at 113.)

brief that it "never operated the same vehicles and equipment as Top Driver [Ohio]." (Suburban Driving's Brief at 2.)[9] Regardless of the truth of this statement, it does not tell the whole story about vehicles linked to Top Driver Ohio and Suburban Driving. For a more complete picture, one need look no further than the statements of Suburban Driving's own representative, as memorialized in the order of the adjudicating committee. The order reflects that "[t]he employer agrees that Suburban [Driving] used vehicles titled to Top Driver Ohio, but this resulted from some requirements for loans to Top Driver Ohio, and the vehicles were only used by Suburban [Driving]." (Stip. at 114.) Thus, Suburban Driving used vehicles titled to Top Driver Ohio, further establishing the connection between the two entities.

{¶ 46} Additionally, Suburban Driving claims it to be an unrefuted fact that "[n]one of Suburban [Driving's] employees ever were employees or independent contractors for Top Driver [Ohio]; nor were Top Driver [Ohio] employees ever employees or independent contractors for [Suburban Driving] (the lone exception being of Thomas Deighan)." (Suburban Driving's Brief at 2.) The administrator's designee found that Top Driver Ohio and Suburban Driving had "two common laborers: Thomas E. Deighan and another employee, which the employer confirmed at the hearing before the Administrator's Designee." (Stip. at 50.) Suburban Driving does not address the inconsistency between its purportedly undisputed fact and this factual finding contained in the order that forms the subject of this action.

{¶ 47} More broadly, to support all of the purportedly unrefuted facts in its brief, Suburban Driving cites only to the November 20, 2018 letter from its own attorney to the BWC. Arguments from Suburban Driving's attorney are not evidence and do not, without more, serve to establish facts regarding the relationship between Top Driver Ohio and Suburban Driving. *See State v. Palmer*, 80 Ohio St.3d 543, 562 (1997) ("[A]rguments of counsel are not evidence."); *State ex rel. Cincinnati Enquirer v. Forsthoefel*, 170 Ohio St.3d 292, 2022-Ohio-3580, ¶ 15. There is no definitive evidence in the record that Deighan, who was present at both the adjudicating committee hearing and the hearing

---

[9] In its reply brief, Suburban Driving argues that "there was no evidence refuting the fact that [Suburban Driving] never operated the vehicles." (Suburban Driving's Reply Brief at 5.)

before the administrator's designee, testified to these issues, nor does Suburban Driving make such a claim now.[10]

**{¶ 48}** This lack of evidence, however, brings forward a crucial point. Suburban Driving does not present a transcript of the hearings before the adjudicating committee or the administrator's designee, or otherwise attest to the contents of those hearings. Without the benefit of a transcript, this court is unable to ascertain all of the evidence that was presented to and considered by the adjudicatory bodies of the administrative agency. It is well-established that "[w]here nothing in the record indicates procedural irregularity, a presumption of regularity attaches to administrative agency proceedings." *Arnold v. Ohio Adult Parole Auth.*, 10th Dist. No. 11AP-120, 2011-Ohio-4928, ¶ 14. *See Cowans v. Ohio State Racing Comm.*, 10th Dist. No. 13AP-828, 2014-Ohio-1811, ¶ 23; *Orth v. State*, 10th Dist. No. 14AP-19, 2014-Ohio-5353, ¶ 13. It is, therefore, presumed that the adjudicating committee and administrator's designee considered and rejected Suburban Driving's arguments as controlling their determination of whether Suburban Driving and Top Driver Ohio were essentially the same employer under Ohio Adm.Code 4123-17-13.

**{¶ 49}** Suburban Driving also takes issue with the finding that Deighan was an owner of Top Driver Ohio. The adjudicating committee noted the arguments of Suburban Driving's representative regarding Deighan's relationship to Top Driver Ohio:

> The employer's representative stated * * * the owner of Suburban [Driving], Tom Deighan, was not an owner of Top Driver Ohio. Mr. Deighan was a "paid consultant" for Top Driver Ohio. * * * The employer's representative stated that the reason Tom Deighan was listed as 51% owner on the workers compensation application for Top Driver Ohio, was due to a mistake made by Top Driver's bookkeeper and was never the case.

(Stip. at 114.) Suburban Driving argues in its brief that the finding that "Deighan was 51% owner of Top Driver [Ohio]" was "erroneous and unsubstantiated." (Suburban Driving's Brief at 3.) To be clear, Deighan signed the application for coverage in which it was stated

---

[10] The adjudicating committee's order notes that both Deighan and Suburban Driving's attorney were present at the hearing. The adjudicating committee notes that the "employer's representative" made certain statements. (Stip. at 114.) However, it is unclear from the limited record if this representative was Suburban Driving's attorney or Deighan.

that he had a 51 percent ownership interest in Top Driver Ohio. No explanation is offered as to why Deighan signed an application that was incorrect in such an important respect. There is also no evidence that Deighan or Top Driver Ohio ever updated this purportedly incorrect ownership information by filing a U-117 policy update form or providing some other notice to the BWC. The application for coverage also required the employer to provide the required information for all owners and officers; Deighan was also the *only* listed officer or owner of Top Driver Ohio in the application.

{¶ 50} Suburban Driving points to copies of tax returns in the record in support of its argument that Deighan was not the owner of Top Driver Ohio. Suburban Driving argues these returns "show[] conclusively that from 2015 through the termination of its business at the end of 2017 Tom Deighan was not an owner of Top Driver [Ohio]." (Suburban Driving's Amended Reply Brief at 6.) Suburban Driving argues that Top Driver Ohio was instead owned by "Vincent Maculaitis, John Deighan and Drive One Investment, LLC." Suburban Driving claims these purported owners are "separate and distinct from Suburban Driving." (Suburban Driving's Brief at 8.)

{¶ 51} The tax returns provided by Suburban Driving are not determinative of the question presented in this mandamus action. First, common ownership may be evidence tending to demonstrate two entities are essentially the same employer. However, as in *HGC*, in which one business by the son of the owner of the other business, common ownership is not a mandatory requirement for finding two entities are essentially the same employer under Ohio Adm.Code 4123-17-13. Second, the tax returns do not make clear the relationship between Deighan and the other individuals or entities mentioned in the tax returns.[11] Thus, the tax returns provided by Suburban Driving do not demonstrate it was error for the BWC to find Top Driver Ohio and Suburban Driving were essentially the same employer under Ohio Adm.Code 4123-17-13.

{¶ 52} Suburban Driving also argues that there was no finding that the purpose of the termination agreement "was to escape workers' compensation obligations." (Suburban Driving's Brief at 6.) The administrator's designee addressed Suburban Driving's arguments related to the termination agreement as follows:

---

[11] No information regarding the relation, if any, between Deighan, Timothy E. Deighan, and John Deighan appears in the record.

> The employer seemingly relies on the terminated license agreement between Top Driver Acquisition, LLC and Top Driver Ohio as a factor that should sever any relationship between Top Driver Ohio and Suburban. The employer argued before the Administrator's Designee Suburban [Driving] began operating following the license termination and it served different schools, customers, and areas of Ohio than Top Driver Ohio. However, that Top Driver Ohio lost its license to use Top Driver Acquisition's software actually proves BWC's point that Suburban is essentially the same employer as Top Driver Ohio. The employer did not offer any evidence that Suburban would have been created but for Top Driver Ohio's dissolution.

(Stip. at 50.) Regardless of whether the termination agreement was evidence of an intention to avoid workers' compensation obligations, the termination agreement, particularly the personal guarantee of payment by Deighan for the TDOH entities, which included both Top Driver Ohio and Suburban Driving, provides some evidence of the interrelationship between Top Driver Ohio and Suburban Driving.

{¶ 53} The purpose of Ohio Adm.Code 4123-17-13(D), as previously determined by this court, is to prevent a subsequent entity from unfairly escaping liability for outstanding obligations to the state insurance fund by undertaking underhanded maneuvers that technically and legally sever the succession between the two entities. *HGC* at ¶ 8. In this matter, the record reflects that prior to Suburban Driving's application to initiate coverage, substantial balances were owed on the policies of Top Driver Ohio and Revolution Sales, which was previously combined with Top Driver Ohio. It is also noted that even though Deighan was the only individual listed as either an owner or operator of Top Driver Ohio in its application for coverage, the answer, "No," was marked on Suburban Driving's application for coverage in response to the question, "Do any of the principals have workers' compensation coverage in this or any other operation; or have they had workers' compensation coverage in any operation in the past?" (Stip. at 91.)[12]

{¶ 54} In conclusion, as discussed above and detailed in the orders of the adjudicating committee and administrator's designee, there exists some evidence in the record to support the finding of the administrator's designee that Top Driver Ohio and

---

[12] Furthermore, Deighan was also one of two individuals listed as an owner or operator of Revolution Sales. When this same question as quoted above was posed in Top Driver Ohio's application for coverage, no response was made.

Suburban Driving are essentially the same employer under Ohio Adm.Code 4123-17-13. *See State ex rel. Aero Pallets, Inc. v. State Bur. of Workers' Comp.*, 10th Dist. No. 19AP-829, 2023-Ohio-1384, ¶ 6 (stating that the "BWC's order * * * must be upheld as long as some evidence in the record supports it"); *State ex rel. Secreto v. Indus. Comm.*, 80 Ohio St.3d 581, 582-83 (1997). To the extent that Suburban Driving's arguments present challenges to the weight or credibility of the evidence, it is not this court's role in mandamus to resolve such challenges. The adjudicating committee and the administrator's designee were best positioned to evaluate the weight and credibility of the evidence presented. *See State ex rel. Block v. Indus. Comm.*, 10th Dist. No. 20AP-137, 2022-Ohio-4474, ¶ 4; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Because challenged order is supported by some evidence in the record and is in accordance with applicable law, Suburban Driving has not established a clear legal right to the requested relief or that respondents are under a clear legal duty to provide such relief.

**D. Conclusion**

{¶ 55} Accordingly, it is the decision and recommendation of the magistrate that Suburban Driving's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the

magistrate's decision within fourteen days of the filing of the decision.